

# THE ATTORNEY GENERAL
## OF TEXAS

### AUSTIN, TEXAS 78711

**JOHN L. HILL**
**ATTORNEY GENERAL**

July 25, 1975

The Honorable Oscar B. McInnis
Criminal District Attorney
Hidalgo County
Edinburg, Texas

Dear Mr. McInnis:

Opinion No. H- 649

Re: Whether a city may
borrow money from
a bank of which the
mayor is a director.

You have requested our opinion regarding whether a city may borrow money from a bank of which the mayor is a director.

Article 988, V. T. C.S., a part of our statutory law since 1875, provides in pertinent part:

> . . . No member of the city council, or any other officer of the corporation, shall be directly or indirectly interested in any work, business, or contract, the expense, price or consideration of which is paid from the city treasury, or by an assessment levied by an ordinance or resolution of the city council . . .

In Attorney General Opinion H-638 (1975) we were asked if a city official could remain pecuniarily interested in a contract made with the city before he was elected to his public position. After reviewing the construction put on article 988 by the court in City of Edinburg v. Ellis, 59 S. W. 2d 99 (Tex. Comm. 1933), we determined that the continued relationship was not permissible. We noted that a rule of liberal construction will be applied to article 988 in order to effect its purpose, and that a public official must avoid a position where his private pecuniary interest might conflict with his public duty. See Attorney General Opinions M-714 (1970), V-640 (1948). Cf. Attorney General Opinions H-624 (1975), C-438 (1965); WW-1241 (1962); Attorney General Letter Adivsory No. 111 (1975). Also see section 39. 01, Texas Penal Code.

The broad language of article 988, V. T. C. S. , would compel a negative answer to your question.

It has been suggested however, that the enactment of article 2529c, V. T. C. S. , effectively repealed article 988 insofar as it might prohibit transactions between banks and cities whose officials sit on the bank's board of directors or own a small percentage of stock in the bank.   That 1967 statute reads:

> Section 1.   The selection and qualification of depositories for the deposit of public funds of all agencies and political subdivisions of the state shall be in accord with the laws now in effect and hereinafter enacted pertaining thereto.

> Sec. 2.   The fact that an employee or officer of a state agency or political subdivision, who is not charged with the duty of selecting the depository thereof, is an officer, director or stockholder of a bank shall not disqualify said bank from serving as the depository of said state agency or subdivision.

> A bank shall not be disqualified from bidding and becoming the depository for any agency or political subdivision of the state by reason of having one or more officers, directors or stockholders of said bank who individually or collectively own or have a beneficial interest in not more than 10 percent of the bank's outstanding capital stock, and at the same time serves as a member of the board, commission, or other body charged by law with the duty of selecting the depository of such state agency or political subdivision; provided, however, that said bank must be selected as the depository by a majority vote of the members of the board, commission, or other body of such agency or political subdivision and no member thereof who is an officer, director or stockholder of the bank shall vote or participate in the proceedings. Common-law rules in conflict with the terms and provisions of this Act are hereby modified as herein provided but this Act shall never be deemed to alter, change, amend or supersede the provisions of any home-rule city charter which is in conflict herewith.

An act applicable to "all agencies and political subdivisions of the state" obviously includes cities, and the final sentence of the statute specifically refers to "any home-rule city charter." However, Attorney General Opinion M-331 (1969) held that an independent school district which had adopted the School Depository Act could borrow money from its school depository even though a member of the school board was also an officer or stockholder in the depository bank. This result was said to flow from the enactment of a statute,( V. T. C.S., art. 2832c; now Education Code, § 23. 75) similar to article 2529c which allows school boards to select banks for depositories under certain circumstances even though members of the school board might have interests in the banks selected.

Attorney General Opinion M-331 suggested, "[i]t would be inconsistent and illogical to conclude that the Legislature intended that a school district could choose as a depository a bank in which a member of the school board was a director or stockholder, but could not borrow money from this same bank."

But, Attorney General Opinion O-6280 (1944) advised that a school board was not authorized to borrow money from a bank where a member of the school board was also a director of the bank. It was said:

> It is as old as the Common Law that a public
> official may not in his official capacity make a
> contract in which he is pecuniarily interested.
> Williston on Contracts, Vol. 6, Sec. 1738. Not
> only did Texas adopt the Common Law as the
> rule of decision as early as 1840, but the fore-
> going principle has been consistently affirmed
> wherever the question has arisen.

Although Attorney General Opinion M-331 found little difference between depositing public funds in a depository bank and borrowing funds from that depository, there are numerous statutory requirements regarding the qualifications and selection of a depository and the security which must be provided to protect the governmental body's deposits. See Education Code, § 23. 71 et seq. These restrictions and requirements do not apply to other transactions such as the type you describe. Compare Attorney General Opinion V-640 (1948).

Given the statutory prohibition against self-dealing contained in article 988, V.T.C.S., the difference between the nature of the transactions involved in your question and those contemplated by article 2529c, V.T.C.S., and the reasoning of Attorney General Opinion O-6280 (1944), we do not believe the Legislature intended that article 2529c should have a wider application than its language plainly indicates. We think a narrow exception to the old and well established common-law rule against self-dealing was intended and that intent is reflected in the language of the statute where it provides that "common-law rules in conflict are hereby modified as herein provided." Article 988, V.T.C.S., was not discussed in Attorney General Opinion M-331, which apparently took stock only of common law origin of the rule. Repeals by implication are not favored and statutes in pari materia will be harmonized, if possible. 53 Tex. Jur. 2d, Statutes, §§ 111, 186.

Article 2529c, V.T.C.S. was enacted by Acts 1967, 60th Leg., ch. 179, p. 370. That act did not contain a repealer clause and expressly "modified" only common law rules in conflict. Its title reads:

> An Act relating to the selection and qualification
> of depositories of all agencies and political sub-
> divisions of the state; and declaring an emergency.

We believe the title correctly reflects the limited purpose and scope of the Act. If the Legislature believes that a further exception to article 988 should be provided to cover the case which you present, it has the power to do so. Since in our view it has not provided that additional exception, we answer your question in the negative.

## SUMMARY

A city may not borrow money from a bank
of which the mayor is a director.

Very truly yours,

JOHN L. HILL
Attorney General of Texas

APPROVED:

DAVID M. KENDALL, First Assistant

C. ROBERT HEATH, Chairman
Opinion Committee